UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 14-80468-CV-MIDDLEBROOKS/BRANNON

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

JCS ENTERPRISES, INC. d/b/a JCS
ENTERPRISES SERVICES, INC., T.B.T.I., INC.,
JOSEPH SIGNORE, and PAUL L. SCHUMACK, II,

Defendants.

_____/

## SIXTH REPORT OF RECEIVER JAMES D. SALLAH, ESQ.

I, James D. Sallah, Esq., not individually, but solely in my capacity as the Court-appointed receiver (the "Receiver") for JCS Enterprises Inc., d/b/a JCS Enterprises Services Inc. ("JCS"), T.B.T.I., Inc. ("TBTI"), My Gee Bo, Inc. ("Gee Bo"), JOLA Enterprise Inc. ("JOLA"), and PSCS Holdings, LLC ("PSCS"), their affiliates, subsidiaries, successors, and assigns (collectively, the "Receivership Entities" or "Estate") submit this Sixth Report regarding the present status of the Estate ("Sixth Report"). Although the Order Reappointing me as Receiver dated December 12, 2014 ("Receivership Order") (DE 173) does not require me to file status reports, I believe it is prudent at this time to submit this Sixth Report to apprise the Court and all interested parties of my ongoing efforts in carrying out my court-ordered obligations.

**IMPORTANT – PLEASE READ CAREFULLY**

THE STATEMENTS CONTAINED IN THIS REPORT ARE BASED ON MY INVESTIGATION CONDUCTED IN THE TIME ELAPSING FROM THE RECEIVERSHIP'S ESTABLISHMENT.  I HAVE COMPILED THIS REPORT BASED ON BOTH MY AND MY PROFESSIONALS': (1) REVIEW OF TENS OF THOUSANDS OF PAGES OF DOCUMENTS, INCLUDING EXTENSIVE FINANCIAL RECORDS; AND (2) INTERVIEWS WITH NUMEROUS INDIVIDUALS, INCLUDING EMPLOYEES, ACCOUNTANTS, LEGAL PROFESSIONALS, VENDORS, INVESTORS, FINANCIAL INSTITUTIONS, AND OTHER RELATED PERSONS.  THE FACTS AND CONCLUSIONS HEREIN MAY BE SUBJECT TO CHANGE AS MY INVESTIGATION PROGRESSES DURING THE COURSE OF THE RECEIVERSHIP.  OTHER THAN THE AMOUNTS CONTAINED IN THE BANKS AND/OR BROKERAGE INSTITUTIONS, THE VALUE OF MOST OTHER ASSETS HAS YET TO BE DETERMINED DEFINITIVELY.  AS ADDITIONAL INFORMATION IS DISCOVERED, I INTEND TO FILE ADDITIONAL REPORTS FROM TIME TO TIME.

IN WRITING THIS REPORT, I HAVE ATTEMPTED TO BALANCE THE IMPORTANCE OF FULL AND FAIR DISCLOSURE OF MATERIAL INFORMATION WITH THE CONCERNS OF THE UNDERLYING BUSINESSES AND ASSETS INFORMATION REMAINING CONFIDENTIAL FOR COMPETITIVE REASONS.  TO THAT END, I HAVE OPTED, IN MOST CASES, TO DISCLOSE A SIGNIFICANT AMOUNT OF FINANCIAL INFORMATION AND CAUTION ANY INDIVIDUALS OR ENTITIES WHO INTENTIONALLY MISREPRESENT THE INFORMATION CONTAINED HEREIN IN AN EFFORT TO DISPARAGE THE RECEIVERSHIP ENTITIES, OR SEEK TO USE IT UNFAIRLY TO GAIN A COMPETITIVE ADVANTAGE, THAT ANY SUCH ACTION MAY HAVE SIGNIFICANT LEGAL CONSEQUENCES.

FINALLY, TO THE EXTENT THAT THE RECEIVERSHIP ENTITIES ARE ENGAGED IN LITIGATION OR ARE EXPLORING POTENTIAL LAWSUITS AGAINST INDIVIDUAL OR ENTITIES, I HAVE NOT SET FORTH ALL OF THE INFORMATION SURROUNDING THESE LAWSUITS OR POTENTIAL LAWSUITS SO AS NOT TO DISCLOSE PRIVILEGED, WORK-PRODUCT INFORMATION, OR LITIGATION STRATEGY.

## I.  CURRENT CASH BALANCES IN RECEIVERSHIP ESTATE ACCOUNTS

As of December 31, 2017, I have obtained the following net cash amounts, which are currently segregated into four primary Estate accounts:[1]

| Receivership Estate Account Balances as of December 31, 2017 | |
|---|---|
| JCS Enterprises, Inc. | $ 2,953,301.88 |
| T.B.T.I., Inc. | 5,571,472.60 |
| My Gee Bo, Inc. | 995,066.12 |
| JOLA Enterprise Inc. | 582,651.29 |
| **Cash Balances in Receivership Estate Accounts** | **$10,102,491.89** |

The table above includes only the cash balances currently maintained in bank accounts under my control.  It represents an increase of **$1,442,377.19** since December 31, 2016, as reflected in my Fifth Report filed on January 11, 2017.  In addition, it excludes, among other things, settlements awaiting Court approval, tangible assets, real property, personalty, and other liquid assets that are also currently under my control, or that otherwise have been frozen.[2]

---

[1]  As explained below, the Court granted my motion to pool or consolidate the Estate's assets.  For accounting and tax purposes, I have continued to segregate the accounts until there is a court-approved distribution at which time I will consolidate the accounts.

[2]  For example, as set forth in more detail below, I have future, court-approved settlement payments due to the Estate totaling more than approximately $400,000, as well as title to two parcels of real property.

In accordance with the Receivership Order and/or this Court's approval, I have also paid certain necessary expenses in carrying out my duties and responsibilities.[3]   Specifically, the following tables reflect amounts transferred to the Estate accounts and disbursements paid from January 1, 2017 to December 31, 2017:

| JCS Enterprises, Inc. – Receivership Estate Segregated Account as of December 31, 2017 | |
|---|---|
| Beginning Balance: 1/1/17 | $2,666,303.91 |
| Receipts: 1/1/17-12/31/17 | |
| Litigation and Settlements | 348,005.75 |
| Real Estate Asset Liquidation | |
| Tax Refunds | 250.00 |
| Royalties and Dividends | 1.09 |
| Total Receipts 1/1/17-12/31/17 | 348,256.84 |
| Disbursements: 1/1/17-12/31/17 | |
| Legal and Professional Fees | 28,752.01 |
| Costs to Maintain Property | 25,285.73 |
| Other Expenses | 7,221.13 |
| Total Disbursements: 1/1/17-12/31/17 | 61,258.87 |
| Balance in JCS Enterprises, Inc. Segregated Account | $2,953,301.88 |

| T.B.T.I., Inc. – Receivership Estate Segregated Account as of December 31, 2017 | |
|---|---|
| Beginning Balance: 1/1/17 | $4,416,093.38 |
| Receipts: 1/1/17-12/31/17 | |
| Litigation and Settlements | 1,305,838.77 |
| Total Receipts 1/1/17-12/31/17 | 1,305,838.77 |

[3] As the Court is aware, on September 6, 2017, my counsel filed my "Fourth Interim Application for an Order Approving and Authorizing Payment of Fees and Expenses of the Receiver and his Professionals" seeking approval for payment for fees and expenses from August 1, 2015 through August 31, 2016. (DE 393). This motion currently remains pending before the Court and will impact the balances referenced above. In the near future, I anticipate submitting my fifth application for professional fees and expenses for the time period of September 1, 2016 through December 31, 2017, which will also impact the balances.

| Disbursements: 1/1/16-12/31/17 | |
|---|---|
| Costs to Maintain Property (voided checks) | **-800.00** |
| Legal and Professional Fees | **151,259.55** |
| **Total Disbursements: 1/1/17-12/31/17** | **150,459.55** |
| **Balance in T.B.T.I., Inc. Segregated Account** | **$5,571,472.60** |

| **My Gee Bo, Inc. – Receivership Estate Segregated Account as of December 31, 2017** | |
|---|---|
| Beginning Balance: 1/1/17 | **$995,066.12** |
| Receipts: 1/1/17-12/31/17 | |
| Litigation and Settlements | |
| **Total Receipts 1/1/17-12/31/17** | |
| Disbursements: 1/1/17-12/31/17 | |
| Legal and Professional Fees | |
| **Total Disbursements: 1/1/17-12/31/17** | |
| **Balance in My Gee Bo Inc. Segregated Account** | **$995,066.12** |

| **JOLA Enterprises, Inc. – Receivership Estate Segregated Account as of December 31, 2017** | |
|---|---|
| Beginning Balance: 1/1/17 | **$582,651.29** |
| Receipts: 1/1/17-12/31/17 | |
| **Total Receipts 1/1/17-12/31/17** | |
| Disbursements: 1/1/17-12/31/17 | |
| Legal and Professional Fees | |
| **Total Disbursements: 1/1/17-12/31/17** | |
| **Balance in JOLA Enterprises, Inc. Segregated** | **$582,651.29** |

## II.   SUMMARY OF CERTAIN LEGAL MATTERS IN THE INSTANT SEC ACTION

### A. The Claims Process

On April 3, 2017, the Court issued an Order granting my Motion to Approve Claim Form, Manner and Notice of Claim Form, and Claims Bar Date filed on March 31, 2017.  (DE 377). Subsequently on July 20, 2017, the Court issued an Order permitting me to make a minor

Page 5 of 26

amendment to the claim form. (DE 386).  In accordance with these Orders, I did the following: 1) published the proof of claim form in *The Palm Beach Post* once a week for four (4) consecutive weeks; 2) provided the claim form along with an explanatory cover letter to all known or potential claimants via U.S. Mail and email, if known; 3) provided notice of the claim form on the Receivership website; and 4) requested that notice of the claim form be posted on the investors' page on Facebook.  Specifically, I mailed the cover letter and claim form to at least **1,030** potential claimants and/or creditors for whom I had gathered contact information.

My notice made clear that the Claim Bar date was November 27, 2017.  In response, I received a total of **700** claim forms (most of which contained documentation) either prior to or after the Claim Bar date.[4]  Since December 2017, my professionals and/or their staff have been organizing and reviewing the submitted claim forms.  This has been, and continues to be, a time-consuming and tedious process that involves, among other things, my forensic accountants comparing documentation submitted with the proof of claim forms to the financial reconstruction of the Receivership Entities' bank and financial accounts and other records under my control.  The process of reviewing the claims forms is ongoing.  While I anticipate that my professionals will finish their review soon, I am unable to provide a date certain on which I will then complete my review.

After I have reviewed all of the submitted claim forms, I will direct my professionals to file a motion requesting court approval of my recommended initial distribution plan to approved investors and third-party creditors.  Considering the number of claims forms, I anticipate that this

---

[4]  I am informing the Court of the total number of claims forms received to date.  I am making no representations at this time concerning the validity of the claim forms submitted after the claim bar date.

motion will be extensive. This motion will then be subject to objections from each claimant, possible litigation, and this Court's consideration.

The Court should be aware that since November 27, 2017, either I or someone at my direction, have spoken with numerous investors and creditors who are curious when I will be making a distribution of monies. At this time, I am unable provide them with a timeframe for an initial distribution. Typically, I would recommend that the Court authorize an initial distribution with a reserve for disputed and/or subordinated claims and future expenses. However, from my initial review of the claims forms, I anticipate that the magnitude of the disputed and/or subordinated claims could have such a significant impact on the Estate that it would be potentially unfair and uneconomical to seek an initial approved distribution until such time as the Court decides all future disputed claims. Therefore, it is difficult for me to predict the time necessary to provide all submitted claimants with due process and for the Court to hear and decide any objections to the recommendations in my future claim motion.

**B.  Additional Assets Transferred to the Estate**

On April 10, 2017, the Court granted my Motion for Order Transferring Assets to the Receivership Estate. (DE 376). After obtaining a Final Judgment against Mr. Paul Schumack and his wife, I was able to recover $400,000, which were held in account entitled the "TBTI, Inc. Defined Benefit Pension Plan." While Florida law typically protects pension plans from judgments, my professionals were able to prove that the transfers to the plan made by TBTI in connection were fraudulent transfers. (*Id.*). As a result of these efforts, I was able to increase the Estate by $400,000.

### C.  Pooling Receivership Assets into One Estate

On March 31, 2017, I filed a Motion to Pool Receivership Entities' Assets Into One Estate for a Future, Approved Claims and Distribution Process. (DE 372).  Mr. Signore then objected to this Motion (DE 380), and I filed a Reply. (DE 381).  After consideration, on May 4, 2017, the Court granted my Motion over Mr. Signore's objection. (DE 382).

In accordance with the Court's Order, all of the assets of JCS, TBTI, Gee Bo, JOLA, and PSCS will be pooled into one receivership estate for court-approved distribution.  I will also consolidate any future collected assets, as per the Order, into one estate.

### D.  Pre-Suit Settlement with Non-Party American Express Bank, FSB

On June 5, 2017, the Court granted and approved my Motion to Approve a Settlement with Non-Party American Express Bank, FSB. (DE 384)  As a result of my professionals' efforts, I was able to secure an additional $100,000 for the Estate as a result of this pre-suit settlement without protracted litigation. (*Id*.).

## III.    LITIGATION RELATING TO THE INSTANT SEC ACTION

The Receivership Order provides that I may initiate actions on behalf of the Receivership Entities against those individuals or entities who received transfers of monies or other proceeds directly or indirectly traceable from investors of the Receivership Entities.  (DE 173).  Such actions may include, but are not limited to, those for disgorgement of profits, unjust enrichment, impositions of constructive trusts, and recovery and/or avoidance of fraudulent transfers under Florida Statute § 726.101, *et seq*.  (*Id*.).  The Receivership Order also provides that I may "defend, compromise or settle legal actions" on behalf of the Receivership Entities.  (*Id.*).

### A.  The Signore Lawsuit

As the Court is aware, on December 6, 2016, I obtained a Final Judgment against Joseph and Laura Signore (n/k/a Laura Grande) (collectively, the "Signore Defendants") in this Court (Case No. 15-CV-80946-MIDDLEBROOKS/BRANNON) ("Signore Lawsuit") (hereinafter, referred to as "*Signore*, DE __") (*Signore*, DE 131).  This report summarizes litigation and matters with Mr. Signore before this Court and the Eleventh Circuit after January 9, 2017, or since my last report to the Court.[5]  Without question, these ongoing matters have delayed my ability to administer the Estate and caused me to expend Receivership resources on professional fees.

### i.  <u>Summary and Status of Mr. Signore's Appeal to the Eleventh Circuit</u>

On December 7, 2016, Mr. Signore appealed this Court's summary judgment order (*Signor*e, DE 134).  After the appeal was docketed in the United States Court of Appeals for the Eleventh Circuit as Case No. 16-175424-E (hereafter, "11th Cir. Dkt. __"), the Eleventh Circuit Clerk of Court issued a letter on December 14, 2016 informing the parties that the appeal "will be dismissed" without further notice after 14 days under Eleventh Circuit Rule 42-1(b) unless Mr. Signore either paid the appellate filing fee or requested "<u>leave to proceed in forma pauperis on appeal in the district court</u>." (underline in original).  Mr. Signore failed to pay the filing fee or initially file a motion to proceed in forma pauperis in this Court. This Eleventh Circuit Clerk then dismissed Mr. Signore's appeal on January 30, 2017 for lack of prosecution due to his failure to pay the filing fee or file a motion to proceed in forma pauperis in this Court "within the time fixed by the rules." (*Signore*, DE 146).  The dismissal operated as the Eleventh Circuit's mandate. (*Id.*).

---

[5] As stated in the Fourth Report, Laura Signore entered into a consent with me in early 2016 to resolve the claims against her.  However, the Receiver has been unable to execute on certain assets jointly held by Ms. Signore during the ongoing litigation with Mr. Signore.

Then, on February 13, 2017, Mr. Signore submitted a consolidated motion in the Eleventh Circuit to recall the mandate and request for opportunity to pursue the appeal, which erroneously claimed the filing fee had been paid by Mr. Signore's father-in-law. (11th Cir. Dkt., Jan. 8, 2018 Response at Exh. 3). In response, on February 15, 2017, the Clerk of Court for the Eleventh Circuit returned this motion as unfiled because the appeal was closed. (*Id.*). The letter also noted, "[n]o further relief is available from this Court until fees have been paid or a motion to proceed in forma pauperis has been filed in district court for ruling." (*Id.*).

No further filings were made by Mr. Signore in the appeal until 5 months later on July 13, 2017, when he submitted a letter admitting the filing fee had not been paid and asking the fee be waived. (11th Cir. Dkt., Jan. 8, 2018 Response at Exh. 4). The Clerk of Court for the Eleventh Circuit then issued a letter in response on July 20, 2017 confirming the appeal is "closed," reiterating "[n]o further relief is available until the full fees have been paid or an affidavit to proceed in forma pauperis has been filed in district court," and returning the letter as unfiled. (*Id.*).

When Mr. Signore still failed to pay the filing fees or take any of the steps necessary to reinstate the appeal (such as filing a motion for leave to appear in forma pauperis), I began moving to execute on the Signore Defendants' assets. (*See, e.g., Signore*, DE 158) (motion for writs of execution and proposed liquidation of assets, which I describe in more detail below). Still Mr. Signore took no steps to preserve his appellate rights. Instead, he waited nearly 3 months and filed a motion for leave to appear in forma pauperis in this Court on October 16, 2017. (*Signore*, DE 174-176). I filed a response in opposition on October 24, 2017 before this Court. (*Signore*, DE 178).

Mr. Signore then waited another 2 months and on December 11, 2017, he filed a notice in the Eleventh Circuit advising it that he filed the in forma pauperis motion before this Court and

that motion remained pending. (11th Cir. Dkt., Jan. 8, 2018, Response at Exh. 5).  Four days later,

on December 15, 2017, the Clerk clerically reinstated Mr. Signore's appeal stating "[t]he dismissal

was issued in error." (*Id.* at Exh. 6).  It is unclear why the Clerk reinstated the appeal because the

appeal was properly dismissed under the rules given Mr. Signore's failure to timely pay the fee or

file an in forma pauperis motion in this Court.

That same day, on December 15, 2017, the Clerk then entered a dismissal of the appeal for

failure to prosecute (*Id*. at Exh. 7) and sent Mr. Signore a letter stating:

> Upon further review, it appears your motion to proceed in forma pauperis was filed
> in the district court AFTER the appeal was dismissed for lack of prosecution.
> Although your motion is pending ruling in the district court, this appeal will remain
> closed. If you wish to proceed with this case, you may file a motion to reinstate
> appeal for consideration.

(*Id*. at Exh. 8).  The Clerk's entry of dismissal stated:

> Pursuant to the 11th Cir. R 42-1(b), this appeal is DISMISSED for want of
> prosecution because the Appellant Joseph Signore failed to pay the filing and
> docketing fees (or file a motion in the district court for relief from the obligation to
> pay in advance the full fee) to the district court within the time fixed by the rules,
> effective December 15, 2017.

On December 19, 2017, Mr. Signore filed a letter requesting "in forma pauperis status that

[he] sought before this Court in order to proceed with his" appeal.  (*Signore*, DE 187).  The

Receiver previously opposed this relief (*Signore*, DE 178), and did not waste the Estate's resources

filing another opposition because the Eleventh Circuit had dismissed his appeal as of December

15, 2017.

On or about January 2, 2018, Mr. Signore then filed a motion to reinstate his appeal with

the Eleventh Circuit. (11th Cir. Dkt., Jan. 2, 2018 Motion).  In turn, I filed a response in opposition.

(11th Cir. Dkt., Jan. 8, 2018 Response).

This Court entered an Order on February 8, 2018 granting Mr. Signore's motion (*Signore*, DE 176) for leave to appeal in forma pauperis. (*Signore*, DE 193).

On February 13, 2018, the Eleventh Circuit issued an order denying Mr. Signore's motion to reinstate his appeal.  (11th Cir. Dkt., Feb. 13, 2018 Order).

## ii.   Summary of Status of Other Filings Before this Court[6]

Mr. Signore has continued to litigate post-judgment, which has forced the Estate to incur additional professional fees and costs.  I have attempted to provide a summary by issue below.

As this Court is aware, on May 25, 2017, I filed an ex parte motion seeking an order to show cause why Mr. Joseph Grande, Mr. Signore's former father-in-law, should not be held in contempt for receiving and recording a Quit Claim Deed from Mr. Signore that named Mr. Grande as the new title owner on real property that was subject to my post-judgment collection efforts and a frozen asset. (*Signore*, DE 148).  After this Court issued an Order to Show Cause granting in part, and denying in part, my ex parte motion, Mr. Grande filed a letter with the Court offering to turn over the property. (*Signore*, DE 149, 152).  As described below, I am in the process of now selling this piece of real property.

Further, on July 25, 2017 and August 3, 2017, Mr. Signore filed "notices" with the Court regarding my alleged prior claims and outstanding issues of this Court's supervision.  (*Signore*, DE 157, 163).  In accordance with this Court's Order to respond to Mr. Signore's notice concerning supervision, I filed a response with a detailed letter to Mr. Signore offering to provide the Court with copies of proof of service on Mr. Signore. (*Signore*, DE 167, 168, 168-1).  On August 23,

---

[6]  As the Court is aware of this matter, I have not included a description of all of the filings in the case.

2017, this Court then issued an order finding that "requiring proof of service on Defendant is not necessary and would be antithetical to the goals of the Receivership." (*Signore*, DE 169).

In the interim, on July 27, 2017, I filed a motion to direct the Clerk to enter Writs of Execution and to authorize proposed liquidation of assets, including Mr. Signore's personalty. (*Signore*, DE 158). The Court initially granted my motion. (*Signore*, DE 159). However, on August 11, 2017, Mr. Signore then filed in opposition my motion to liquidate assets seeking in part, the "wildcard" exemption under Section 222.25 of the Florida Statutes. (*Signore*, DE 165).

At about the same time, Mr. Signore also filed a motion to stay further proceedings pending appeal, or alternatively for corrective action by the Court. (*Signore*, DE 166). In response, on August 16, 2017, the Court entered an order construing Signore's Response in Opposition (DE 165) as a Motion to Reconsider the Court's Order directing the Clerk to enter Writs of Execution and ordered me to respond accordingly. (*Signore*, DE 167). In response, on August 25, 2017, I filed both a Response to Signore's Motion to Reconsider as well as a Response in Opposition to his Motion to Stay. (*Signore*, DE 170, 171). In my Response (*Signore*, DE 170), I recommended to the Court that given a cost-benefit analysis and pure economics, it is in the Receivership Estate's best interest for me to simply provide certain items of personalty to Mr. Signore that total the statutory "wildcard" exemption amount of $4,000 based on the appraised value of the items listed in the Receiver's appraisal report (*Signore*, DE 158-7). However, I suggested that the Court should make such personalty available subject to any future determination of asset distribution in Mr. Signore's stayed divorce action. (*See* DE 234). This issue remains unresolved and I have continued to maintain the assets at issue until further order of the Court.

Mr. Signore's opposition also included a purported claim against me personally entitled "Claim for Damage, Injury, or Death." (*Signore*, DE 165-1). In my Response, I explain that this

"Claim" is purportedly an administrative claim under the Federal Tort Claim Act, 38 U.S.C. § 1346 ("FTCA"), submitted to Your Honor, which seeks approximately $9 million in damages. (*Signore*, DE 170, 170-1).  For the numerous reasons set forth in my Reply, I submit that the Court should strike and/or wholly reject the purported claim. (*Id*.).   This issue also remains unresolved.

On January 25, 2018, the Court issued an Order denying Signore's Motion to Stay (DE 166) as moot because his appeal was dismissed by the United States Court of Appeals for the Eleventh Circuit.  (*Signore*, DE 190).  The Court's Order also states that to "the extent Defendant's motion is requesting that the Court reconsider the Order at DE 159, such motion is duplicative of the relief sought in DE 165 (*see* DE 167), and thus will not be considered here." (*Id*.).[7]  On February 1, 2018, I filed a motion for clarification of the Endorsed Order (*Signore*, DE 190), which is pending. (DE 192).

Mr. Signore has also filed a number of letters with the Court.  (*See Signore* DE 173, 177, 187; DE 394).  Mr. Signore mailed three (3) letters – two dated October 13, 2017 and one dated October 12, 2017 – to the Clerk of Court. (*Id*.).   In sum, Mr. Signore's letters to the Court essentially concern, among other things:  1) his request that the Court order an audit concerning my work; 2) his opposition to my Fourth Interim Application for an Order Approving and Authorizing Payment of Fees and Expenses of the Receiver and his Professionals with Incorporated Memorandum of Law Application (DE 393); 3) his reply to my Response to Signore's Motion to Reconsider Order Granting Motion to Direct Clerk to Enter Writs of Execution; and 4)

---

[7]  The Court denied a previous Motion to Stay (*Signore*, DE 136) that Mr. Signore filed in this case.  (*Signore*, DE 143).  The Court also struck another Motion to Stay that Mr. Signore filed (*Signore*, DE 142).

his request to proceed informa pauperis in an appeal of the Court's Order on Summary Judgment. (*Signore* DE 173, 177, 187).

I filed an Omnibus Response to Mr. Signore's Letters requesting that the Court deny Mr. Signore's letter seeking an audit of the Estate and reject Mr. Signore's opposition to my Fourth Interim Application for Fees and Costs. (*Signore*, DE 179). Mr. Signore then filed a Reply to my Response (DE 395). After seeking approval from the Court, I filed a Surreply requesting the Court to deny the relief requested in Mr. Signore's letter seeking an audit of the Estate and reject Mr. Signore's opposition to my Fourth Interim Application for Fees and Costs. (*Signore*, 184, DE 398) While the Court previously issued an Order on Defendant's Notice Regarding Supervision of the Receiver (*Signore*, DE 169), Mr. Signore's more recent request for an audit and his opposition to the Receiver's Fourth Application for Fees and Costs remain unresolved.

On November 22, 2017, I filed a Motion for Approval of: (1) Private Sale of Real Property (Located at 77 Trail North, Palm Beach Gardens, Florida 33418) Free and Clear of Liens, Claims, and Encumbrances; and (2) Form and Manner of Notice of Sale, Bidding. (*Signore*, DE 181, 181-1 through 6). On January 19, 2018, the Court entered an Order granting my motion to sell the property. (*Signor*e, DE 189). I am currently in the process of adhering to the Court's Order to sell the property. I currently have a pending sale in the amount of $205,000 less closing costs. (*Id*.).

Finally, I moved this Court to approve Defendant/Judgment Debtor Joseph Signore's Power of Attorney, Joseph Grande, to sign a Quit Claim Deed to the Receiver for the real property located at 14161 64th Drive North, Palm Beach Gardens, Florida that I already possess by virtue of this Court's self-executing deed in the form of the Final Judgment against Defendants Joseph Signore and Laura Signore. (*Signore*, DE 131). However, the title insurer required a specific Quit Claim Deed to ultimately sell – as required by the Final Judgment – the subject property for the

benefit of the Court-approved creditors of the Receivership Estate. (*Signore*, DE 188).  In an effort to stop the execution of a Quit Claim Deed, on January 26, 2018, Mr. Signore filed a Notice with the Court revoking Mr. Grande as his power of attorney. (*Signore*, DE 191).  I will be addressing this issue in the near future with an appropriate filing.

## IV.     LITIGATION WITH THIRD-PARTIES AND RELATED SETTLEMENTS

As of January 2018, I have initiated multiple lawsuits against a total of more than one-hundred thirty (**130**) individuals and/or entities, including those identified Section II, above, seeking to recover monies that they received in excess of their contributions.  While many of these claims have been settled, I have described, in summary fashion, the cases that were filed since my last Report, as well as those cases previously identified that have had some activity.

### A.    *Sallah v. Flansburg, et al.*, Case No. 16-CV-80032-MIDDLEBROOKS/BRANNON

On January 7, 2016, I filed a lawsuit against a number of alleged profiteers and, as indicated in my last report, had resolved claims against almost all of them with the exception of Clarence Martin ("Martin"), Jorge Bustamante, Jr. ("Bustamante"), and Jesse Arocha ("Arocha").  (Case No. 16-CV-80032-MIDDLEBROOKS/BRANNON) (all references herein shall be cited as "*Flansburg*, DE__").  As previously stated, I had obtained Clerk's defaults against these individuals, and the Court entered final default judgments against them, respectively, on December 15, 2016.  (*Flansburg*, DE 107, 108, 109).  Thereafter, the Court closed the Flansburg case. (*Flansburg*, DE 110).  After obtaining final default judgment against Martin, I reached a settlement that this Court, in the instant case, approved on April 18, 2017.  (DE 379.)  I have had discussions with Bustamente regarding a resolution of the judgment against him and am in the process of attempting to recover on the judgment against Arocha.

**B.** *Sallah v. Insurance and Financial Health Services, Inc., et al.,*
    **Case No. 16-CV-80035-MARRA**

Since my last report, the Court in the case styled as *Sallah v. Insurance and Health Services, Inc., et al.*, Case No. 16-CV-80035-MARRA) (hereinafter referred to as "*Marshall*, DE __") ordered Defendants Insurance and Financial Health Services, Inc. ("IFHS"); Richard Kaufman ("Kaufman"), and Darryl Demarco ("Demarco") to comply with the judgments against them by providing sworn financial affidavits. (*Marshall*, DE 65, 66, 67). Because Kaufman and Demarco had not provided sworn responses to the Fact Information Sheet, as required by the judgments, I moved the Court to issue an order to show cause as to why they should not be held in contempt on December 13, 2017. (*Marshall*, DE 71, 72). On January 5, 2018, the Court ordered Kaufman and Demarco to show cause. (*Marshall*, DE 74, 75). I am in the process of negotiating with Demarco. On January 19, 2018, Kaufman filed a request that the Court clarify its Order to Show Cause. (*Marshall*, DE 76.). The Court noted that it had:

> previously ordered Defendant Richard L. Kaufman to complete the Fact Information Sheet, Fla. R. Civ. P. Form 1.977 in three separate Orders . . . . Notwithstanding these prior orders, Defendant Richard L. Kaufman has failed to comply with this Court's previous orders. Most recently, the Court specifically advised Defendant Kaufman that his failure to respond to the Order to Show Cause or failure to comply with the prior Orders of this Court may result in an arrest warrant being issued for Defendant Kaufman by this Court.
>
> Defendant Richard L. Kaufman has now filed a one-page, five-line letter which the Court finds to be frivolous and dilatory. It appears that Mr. Kaufman is playing games with the Court. Such behavior will not be tolerated.

(*Marshall*, DE 77) (internal citations omitted). The Court ordered Defendant Kaufman to complete the Fact Information Sheet on or before February 8, 2018. (*Marshall*, DE 77). Defendant Kaufman has failed to comply. Accordingly, I intend to address this deficiency with the Court.

Separately, on September 2, 2016, I moved the Court for default judgment against Defendants AKL Financial Services, Inc. ("AKL"), Alan Kaplan ("Kaplan"). (*Marshall*, DE 54). On August 14, 2017, the Court entered final judgment against Kaplan and AKL. (*Marshall*, DE 69). I am in the process of moving the Court to compel Kaplan and AKL to comply with the terms of the judgment by providing sworn financial statements.

### C. *Sallah v. Tanney, et al.*, Case No. 16-CV-80399-ZLOCH

Since my last report, in the case styled as *Sallah v. Tanney, et al.*, Case No. 16-CV-80399-ZLOCH (S.D. Fla. Mar. 16, 2016) (hereinafter referred to as "*Tanney* DE __"), the Court approved the settlements with Defendants Erich Henley ("Henley"), Gregory Lowe ("G. Lowe"), AHD Investments, LLC ("AHD"), Janet Johnson ("J. Johnson"), Wroten Enterprises, Inc. ("Wroten"), and Thomas Episcopo ("Episcopo"). (*Tanney*, DE 70, 71, 72 and 73). I dismissed the claims against these settling Defendants on July 24, 2017. (*Tanney*, DE 78).

I obtained Clerk's Defaults against Ligia Tanney, Vanlyn, and Lundstrom. (*Tanney*, DE 29, 40). On August 31, 2016, I moved the Court to enter default judgment against Vanlyn and Lundstrom and against Ligia Tanney. (*Tanney*, DE 58, 62). On November 9, 2016, I filed an amended motion for default judgment against Ligia Tanney. (*Tanney*, DE 65). On November 16, 2016, I filed an amended motion for default judgment against Lundstrom and Vanlyn. (*Tanney*, DE 66). On September 29, 2017, the Court denied the amended motion for default judgment against Ligia Tanney, requesting that I make certain as to the amounts claimed in the motion, and I renewed the motion on October 2, 2017. (*Tanney*, DE 79). On October 18, 2017, the Court entered final default judgment against Ligia Tanney. (*Tanney*, DE 82).

On October 3, 2017, the Court entered final default judgment against Joy Lundstrom and Vanlyn. (*Tanney*, DE 81). I sent copies of the judgment to banks that I believed might hold assets

of Joy Lundstrom and/or Vanlyn.  Subsequently, I discovered that Joy Lundstrom had filed for bankruptcy protection in the Eastern District of Wisconsin.  I negotiated with bankruptcy counsel for Joy Lundstrom and have released funds that were frozen that were the property of Joy Lundstrom, but have retained the assets of Vanlyn.  My counsel is contemplating pursuing third party claims of persons who may have received assets from Vanlyn.

**D.  *Sallah v. National Strategic Corp*., et al., 16-CV-80611-MARRA**

On April 19, 2016, I filed a lawsuit against National Strategic Corporation, LLC, RBS Investment Group, LLC, S Management, LLC, DAS Funding Group, LLC, Eric Chen, Longview Pediatrics, PLLC, Reservoir Acquisitions, LLC, Jerome Lahlou, Jason Ellis, Christiana Loiacano, Done Rite Roofing, Inc., Nina Campagna, Emmett Batten, Kathy Batten, Amanda Altizer, David Altizer, Derek Altizer, Harold Louis, Joseph Eastwood, Eastwood Enterprises USA, Inc., Marangely Vazquez, Grant Toney, Patrice Toney, O.T., and Todd Grant (collectively, the "National Strategic Defendants") in the U.S. District Court for the Southern District of Florida (Case No. 16-CV-80611-MARRA) (hereinafter referred to as "*National Strategic*, DE __").  As previously reported, I had settled claims with Eric Chen, Longbiew Pediatrics, PLLC, Reservoir Acquisitions, LLC, and Marangely Vazquez.  (*National Strategic*, DE 43, 44).  Since my last report, the Court has approved my settlements with Defendants Emmett Batten, Kathy Batten, Amanda Altizer, David Altizer, Derek Altizer, Nina Campagna, Joseph Eastwood and Eastwood Enterprises USA, Inc. (*National Strategic*, DE 62, 63, 104, 113, 96).

On October 5, 2016, Defendants Grant Toney, Patrice Toney, O.T. (the "Toneys") and (b) National Strategic Corporation, LLC, RBS Investment Group, LLC, and S Management, LLC moved the Court to dismiss the action. (*National Strategic*, DE 50, 51).  Jerome Lahlou, who is represented by the same counsel, filed a motion to dismiss based on the same grounds on April 7,

2017.  (*National Strategic*, DE 84).  I strongly opposed these Defendants' position and motion. (*National Strategic*, DE 68, 69, 100).  In May 2017, I mediated my claims against the Toneys and National Strategic Corporation, LLC, RBS Investment Group, LLC, and S Management, LLC.  I settled the claims with the Toneys.  On June 29, 2017, I moved the Court to approve the settlement with the Toneys, and the Court approved on July 12, 2017.  (*National Strategic*, DE 86, 96).

I did not reach a settlement at mediation with Defendants National Strategic Corporation, LLC, RBS Investment Group, LLC, and S Management, LLC.  I have had additional settlement discussions with these Defendants' counsel.  These Defendants' counsel also represent Defendant Jerome Lahlou, and I have had additional discussions with counsel about resolving claims against Defendant Lahlou.  On October 18, 2017, the Court denied the motions to dismiss by Defendants National Strategic Corporation, LLC, RBS Investment Group, LLC, S Management, LLC and Jerome Lahlou.  (*National Strategic*, DE 115).  On November 9, 2017, the Court entered the Scheduling Order for the *National Strategic* case with the case set for trial during the two-week calendar commencing Tuesday, February 19, 2019.  (*National Strategic*, DE 119).  I am in the process of finalizing a potential settlement with National Strategic Corporation, LLC, RBS Investment Group, LLC, and S Management, LLC, which would be subject to the Court's approval.  I am also finalizing a confidentiality agreement with Jerome Lahlou to obtain certain documents from him.

As noted in my previous report, I have been unable to locate Defendants Jason Ellis, Todd Grant, DAS Funding Group LLC or Dominick Schender for purposes of service of process.  I voluntarily dismissed claims against them pursuant, without prejudice, and intend to pursue claims against them in the event they can be located for service of process.  (*National Strategic*, DE 60,

90).   The Court ordered that these claims dismissed without prejudice on January 3, 2017. (*National Strategic*, DE 64, 98).

On February 5, 2018, I moved the Clerk of the Court to enter default against Harold Louis. Subsequently, I reached a settlement with Defendant Louis through his counsel.  On February 27, 2018, I moved the Court to approve the settlement, which was approved on February 28, 2018. (*National Strategic*, DE 133).

### E.   *Sallah v. Leo Miller, et al.*, 16-CV-81235-ROSENBERG

On July 11, 2016, I filed a lawsuit against Leo Miller, the Estate of Curtis Tanney, Trident Title, LLC ("Trident Title"), Realty Premier Inc. d/b/a Exit Realty Premier ("Exit Realty"), Ligia Tanney, and PNC Bank, N.A. ("PNC Bank") (hereinafter referred to as "*Miller*, DE __").  That lawsuit sought to recover funds that were improperly transferred from certain of the Receivership Entities (and for which the Receivership Entities received nothing in return).  That matter has been successfully resolved in its entirety.

On or about February 17, 2017, I agreed to settle with defendant Trident Title, LLC (subject to Court approval) in exchange for payment in the amount of $10,000 – and that settlement was approved by the Court on March 27, 2017.  (*Miller,* D.E. 94-1, 99, 112).  On March 30, 2017, the parties conducted mediation before Judge Joseph P. Farina, but no additional settlements were arrived at that day and, therefore, I pressed forward with the litigation.  On May 4, 2017, a final default judgment was entered against Defendant Leo Miller in the amount of $500,000.  (*Miller,* D.E. 118).  On May 17, 2017, a separate final default judgment was entered against Defendant Ligia Tanney, also in the amount of $500,000.  (*Miller,* D.E. 121).  On April 20, 2017, I agreed to settle with defendant Realty Premier, Inc. d/b/a Exit Realty Premier (subject to Court approval) in exchange for payment in the amount of $10,000 – and that settlement was approved by the Court

on May 1, 2017.  (*Miller,* D.E. 114-2, 116, 120).  And on or about May 18, 2017, I agreed to settle with defendant PNC Bank, N.A. (subject to Court approval) in exchange for payment in the amount of $130,000 – and that settlement was approved by the Court on May 31, 2017. (*Miller,* D.E. 122-2, 123, 126).

All settlement payments were made timely and, as such, this matter came to an end.

### F.  *Sallah v. 4-1-1 Group, Inc., et al.*, 17-CV-80584-ROSENBERG

On May 8, 2017, I filed a complaint against 4-1-1 Group, Inc., d/b/a 4-1-1 Hitting Group, Inc.; Certified Tax Experts, Inc.; Michael Furfaro; and MAF Giants, Inc.  (*4-1-1*, DE 1.)  I brought claims against the *4-1-1* Defendants under various provisions of FUFTA and for unjust enrichment.   These were essentially clawback claims, in which I was attempting to obtain a judgment against the *4-1-1* Defendants for the monies that they received from the Receivership Entities.

On June 27, 2017, I moved the Court to approve a settlement with Michael Furfaro and MAF Giants, Inc., which was approved by the Court on July 5, 2017.  (*4-1-1*, DE 18, 24.)  The remaining parties agreed to mediate the claims I had against them, scheduled for November 29, 2017 with other Defendants in the *Searock* and *CN Global Partners* cases, described below. Immediately prior to mediation, I agreed to terms with Certified Tax Experts, Inc.  I mediated the claims with *4-1-1* Group at the mediation, and we settled the case through the assistance of the mediator.  The Court approved the settlements on December 15, 2017, and I dismissed the claims against all Defendants in the *4-1-1* case with prejudice.  (*4-1-1*, DE 39, 40).

### G.  *Sallah v. CN Global Partners, L.L.C.*, 17-CV-80649-MARRA

I engaged in negotiations with a profiteer, both directly with the profiteer and through counsel, regarding a transfer that I deemed to have been a fraudulent transfer.  Those pre-suit

negotiations did not reach any resolution and, on May 22, 2017, I filed a lawsuit against the profiteer individually.  (*CN Global*, DE 1.)  I brought claims against this individual under various provisions of FUFTA and for unjust enrichment.  These were essentially clawback claims, in which I was attempting to obtain a judgment against this individual for the monies received from the Receivership Entities.

The individual filed an answer to the Complaint, together with a counterclaim against the Receivership Estate.  (*CN Global*, DE 7).  My counsel was in the process of preparing a motion to strike affirmative defenses and a response to the counterclaim, when the parties agreed to attempt to mediate the Receiver's claims.  Further, in order to conserve costs, the individual and I agreed to mediate the claims at the same time as the mediation of several other claims I asserted against other profiteers, as described below.

The individual had asserted that I had asserted claims against the wrong person—that the claims should have been asserted against the individual's limited liability company, CN Global Partners, L.L.C.  I have, subsequently, dismissed claims against the individual and have amended the complaint in order to add CN Global Partners, L.L.C. (*CN Global*, DE 28).  I have reached a settlement with CN Global Partners, L.L.C., and the Court approved the settlement on February 6, 2018.  (*CN Global*, DE 33).

### H.  *Sallah v. Searock*, 17-CV-80665-ROSENBERG

On May 24, 2017, I filed a complaint against forty-nine (49) alleged profiteers.  (*Searock*, DE 1).  I brought claims against the *Searock* Defendants under various provisions of FUFTA and for unjust enrichment.  These were essentially clawback claims, in which I was attempting to obtain a judgment against the *Searock* Defendants for the monies that they received from the

Receivership Entities. Most of the profiteers in the *Searock* case were alleged to have earned small profits relative to other cases I have filed.

I have settled claims with twenty-five (25) of the profiteers, including through mediation which was scheduled on November 29, 2017 (*Searock*, DE 51, 69, 80, 94, 100, 107). With one of the profiteers, I entered into a settlement agreement after I had obtained a Clerk's default. (*Searock*, DE 80). I am also in the process of obtaining an executed settlement agreement, subject to Court approval, for Defendant Cuor di Leone Inc., following a final default judgment, and from Defendant Patrick Murphy. I am also finalizing a settlement with Defendant Rhonda Roqueta, whose husband, who was named as a Defendant in this action, had passed away, as indicated in the Suggestion of Death filed by Ms. Roqueta's counsel. (*Searock*, DE 33).

I have obtained final default judgments against Defendants Powell Bryant Investments, LLC, Leonardo Redondo, Kathleen Wenger, Cuor di Leone Inc. and Robert Graziose on January 8, 2018. These Defendants have forty-five (45) days within which to provide me with completed Fact Information Sheets, Fla. R. Civ. P. Form 1.977, under oath. I have voluntarily dismissed my claims against fifteen (15) Defendants as a result of our inability to locate these persons for service of process or based on a determination that pursuing such claims would be inequitable. (*Searock*, DE 85, 117).

Finally, Defendant Jonathan Campagna filed an answer to the Complaint. (*Searock*, DE 42). Defendant Campagna was invited to mediate on November 29, 2017, but declined to participate. On February 28, 2018, I moved for summary judgment against Defendant Jonathan Campagna. (*Searock*, DE 123).

I.     ***Sallah v. Erik Leander, et al.*, 17-CV-81406-MIDDLEBROOKS**

On December 29, 2017, I filed a verified complaint against Erik Leander and Fuel Foods,
Inc.  *(Fuel Foods*, DE 1.)   I brought shareholder claims, including, among others, breach of
fiduciary duty and unjust enrichment, against these defendants as a result of Mr. Schumack's
causing TBTI and PSCS to transfer approximately $1.18 million to Fuel Foods in three (3) tranches
in return for shares of stock that were later assigned to the Receivership Estate.  I am currently
attempting to serve process on these defendants, after which this lawsuit will proceed.

**V.     PRE-SUIT DEMANDS AND SETTLEMENTS**

Since the submission of my Fifth Report, the Court has approved settlement agreements
with individuals or entities whom I contended were profiteers.

**A.  Approved Settlements**

I sent demand letters to profiteers, including the parties in the cases listed above, including
the *4-1-1*, *Searock* and *CN Global* cases.  I was able to settle some of the claims I had before filing
a complaint.   On January 31, 2018, I moved the Court, on an unopposed basis, to approve
settlements with Non-Parties Melissa and Abraham Darvish; Roger Saltamach; Timothy Hartman;
Carrie Ann Koepp; and Steven Brewer.  I have also moved to file the respective settlement
agreements under seal.

**B.  Future Anticipated Litigation**

In my earlier Reports, I indicated that I would be sending out demand letters to individuals
and/or entities that I believed had received more monies back from the Receivership entities than
the amount they invested, and/or should return funds to the Receivership Estate.  I believe that I
have exhausted that process and do not anticipate filing any additional complaints unless described
above.

## VI.   OTHER SIGNIFICANT EVENTS

### Efforts to Recover Monies from Taxing Authorities

As explained in my last report, shortly after my appointment as Receiver, I discovered that during 2013, TBTI remitted $500,000 to the Department of the Treasury for the benefit of Paul and Christine Schumacks' purported federal income tax liability.  The purported tax liability was a result of TBTI reporting income to the Schumacks that was subject to federal income tax.

As a result of amended 2013 and 2014 TBTI tax returns, the Schumacks filed individual federal income tax returns for 2013 and 2014 that corrected the inaccurate portrayal of the monies received by the Schumacks from TBTI as income subject to federal income tax.  The Schumacks have agreed to turn over any refund they receive as a result of these tax filings to the Receiver for the benefit of the Receivership Estate.  According to Ms. Schumack and her tax return preparer, who has been given power of attorney at my request, neither has received correspondence, to date, from the IRS.  I intend to continue to pursue this matter.

## VII.   CONCLUSION

In conclusion, I am continuing to carry out my directives under the Receivership Order.  I plan to submit additional status reports from time to time, and the facts and conclusions in this Sixth Report are subject to change as my investigation and litigation progresses during the course of the Receivership.

Executed March 2, 2018                    Respectfully submitted,

/s/ James D. Sallah
James D. Sallah, Esq.,
Not individually, but solely in my capacity as Receiver of JCS Enterprises, Inc. d/b/a JCS Enterprises Services, Inc., T.B.T.I., Inc., JOLA Enterprise, Inc., PSCS Holdings, LLC, and My Gee Bo, Inc.