UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

SECURITIES AND EXCHANGE COMMISSION, )
)
    Plaintiff, )
)
v. ) No. 14-CV-80468-
) MIDDLEBROOKS/BRANNON
JCS ENTERPRISES, INC. d/b/a JCS )
ENTERPRISES SERVICES, INC., T.B.T.I. )
INC., JOSEPH SIGNORE, and )
PAUL L. SCHUMACK, II, )
)
    Defendants. )

FILED BY __PDC__ D.C.

NOV 09 2018

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. — W.P.B.

## JOSEPH SIGNORE'S OBJECTIONS TO RECEIVER'S FIFTH APPLICATION FOR FEES (DE 407) AND CONTINUED REQUEST FOR AUDIT

Comes now the Defendant, Joseph Signore, ("Signore"), pro se, and respectfully objects to the Receiver's ("Sallah") Fifth Application for Order Approving Payment of Fees etc. (DE 407). Signore, as before, must object to paying Sallah for the reasons stated below:

### I. Brief Background

From time to time over the past few years Sallah has approached this Court for payment of his fees and expenses and those of the persons whom he has retained to assist him in his work. He has every right to get paid a fair fee for his work. Signore would never object to that.

Sallah has now presented a fifth application for payment for fees and expenses and as has been the case every time since then, there are peculiarities in his application/summary/billing sheets. Signore will elaborate on just some below.

This Court, in its latest order (DE 230 of 9:15-cv-80946) described the instant type objections by Signore as "generalized concerns about the Receiver's actions . . . ." (Id. p. 1). Signore must respectfully state that he has made specific allegations of . . . "peculiarities" that have been born out by Sallah's own filings and billing sheets.[1]

We are again at that crossroad.

## II. Court's Supervision

As both Signore and Sallah have stated, this Court has the duty to supervise Sallah and ensure the propriety of Sallah's actions. This duty is extremely broad and left to the sound judgment of this Court. SEC v. Elliott, 953 F.2d 1560, 1566 (11th Cir. 1992).

Signore has the sense to concede that this Court does not have the time or inclination to look over Sallah's shoulder at every turn and micro-manage this receivership. But if Signore, as a layman, can so easily find such errors as have been pointed

---

[1] Signore has, in the past, and on several occasions, pointed out specific errors, omissions and false statements on the part of Sallah in his billing of the receivership. Signore will not burden the Court with repeating them here but they are already in the record and Sallah has, each time, strongly refuted them (except once).

2

out, what in the world would a team of auditors discover? And why such virulent opposition by Sallah? This Court has required Sallah to obtain numerous appraisals for selling real property, it has required hearings to learn the facts of certain acts by Sallah and it has further required other certifications and attestations in accordance with law. Is an audit request so much out of line in these types of multi-million dollars dealings?

### III. This Particular Application

Sallah, in late September, asked for another set of fees and expenses. Facially, Signore would have no reason to object. Signore states outright that Sallah and his professionals have a right to earn a living. (Signore Decl. ¶ 5 ("Signore, ¶__")).

Signore, as a layman, and nothing more, examines that which is sent to him by Sallah. (Signore, ¶ 4-5). Signore figures this is what the pleadings are sent to him for anyway.

Signore is affected by what the receivership "loses" in expenses, fees and the like. Additionally, Signore still has a direct appeal pending in his criminal matter. (Signore, ¶ 2-3). Should that appeal be successful, it will have a direct bearing on the instant matter. Also, for purposes of the actual loss and in determining restitution, what is eaten up by receivership staff affects Signore. (Signore, ¶ 6). So for all these reasons it is a legitimate concern for Signore that Sallah and his team earn a decent living, but at a fair price, and one not inflated or filled with incorrect statements to this Court. Which brings us to the current scenario.

3

In the most recent request for fees/expenses by Sallah (DE 407 in case number 80468, cited above), Sallah makes a statement, through counsel, that he has staffed "the day-to-day activities of this matter using the services of professionals" and that "the Court should note that he [Sallah] has elected not to seek any fees in this Fifth Application for his telephone conversations or communications with investors." (DE 407, p. 6).

This statement appears to be the latest example of, at best, misspeak. Here's why: It is true that from a review of the billing sheets, a great amount of work is handed off to "paralegals," "legal assistants" and "interns." This is of course reasonable on its face. Sallah cannot be expected to do the work of a dozen or more people. But the rub is that his people are billing out at what appears to be huge rates. And worse than that, they _are_ billing out tasks that Sallah specifically states he is not billing.[2]

A review of the billing sheets seems to indicate that 32 hours of work, at very high rates of pay, are billed out for talking with investors. And of course, since Sallah is a

---

[2] Should Sallah respond that his statement is correct in that he is not billing the tasks but that others are, this is just smoke and mirrors. He is making money off the work of his staffers for his and his firm's benefit. And even assuming, arguendo, that this too is fine, his statement is still incorrect at the end of the day. The receivership is being billed for communications with investors.

4

partner in the firm, he is certainly benefitting from this arrangement and false statement.

This is not a difficult set of circumstances and it is not inherently evil on anyone's part, but audits exist for a reason. They keep everyone honest and on their toes. By Sallah's own admission, he and his firm do quite a bit of receivership work. Evidently he has become comfortable in doing as he pleases so long as he has big-gun names doing reports and analysis for him. So long as there are nice spread sheets and routine requests for permission to do this and that, he has free run. These are the appearances. And the misstatements, the errors in billing already admitted to by Sallah, and now the false statement about billing for some work, all suggest that there is room for a neutral person to step in and closely examine all the transactions of Sallah.

There is probably a reason that Sallah has so consistently and so viciously opposed such a thing. The points that Signore has made over the past 30 months are not conjecture or wild hunches, they have been taken directly from Sallah's own pleadings and billing sheets. They are <u>his</u> own words being shown for what they are, not someone else's.

### IV. Conclusion

For the reasons stated above, Joseph Signore must respectfully object to the payment to Sallah, or anyone else, at this time, any fees or expenses. And it is for these reasons

5

stated herein and in other pleadings that Signore must again ask the Court to Order an independent audit to ensure that all participants in the receivership are treated fairly and in an open manner, as they should.

Respectfully submitted,

Dated: November 5, 2018

_____
Joseph Signore

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was duly served on all parties to this action, this 5th day of November, 2018, by First Class U.S. Mail, with proper postage and the correct address affixed.

_____
Jospeh Signore

⇔05081-104⇔
Mr Joseph Signore
FMC Federal Medical Center
PO Box 14500
Lexington, KY 40512
United States



⇔05081-104⇔
Judge D Middlebrooks
701 Clematis ST
Room 257
WEST PALM BCH, FL 33401
United States

3340135113 C028